UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

VESTA LIBERTY STREET, LLC,
    Plaintiff,

v.

ELX, LLC, et al.,
    Defendants.

No. 3:21-cv-1719 (SRU)

## ORDER ON DEFENDANTS' MOTION FOR REARGUMENT/RECONSIDERATION OF APPLICATION FOR PREJUDGMENT REMEDY

This is a case about a breach of lease agreement. The landlord—Vesta Liberty Street, LLC ("Vesta")— commenced this action in Connecticut state court against former tenants ELX, LLC f/k/a Electrix, LLC ("ELX") and Evolution Lighting LLC, ("Evolution") (together, the "Defendants"). The case was later removed. Prior to removal, the state court granted Vesta a prejudgment remedy against ELX and Evolution in the amount of $3 million. The Defendants filed a motion for reargument and reconsideration on the basis that the state court judge overlooked facts that, as a matter of law, would have resulted in a lower monetary award.

Because the record supports the Defendants' arguments for reconsideration, the motion, doc. no. 4, is **granted**.

### I.  BACKGROUND

    A.  Procedural History

On February 16, 2021, Vesta commenced this action in the Connecticut Superior Court against Defendants ELX and Evolution. *See Vesta Liberty Street, LLC v. ELX, LLC F/K/A*

*Electrix, LLC et al.*, Case No. NNH-CV21-6118458-S (Conn. Sup. Ct.).[1] Pursuant to Connecticut General Statute § 52-278a *et seq.*, Vesta moved in state court for a prejudgment order of attachment against the Defendants. State Dkt. No. 105.00.

An evidentiary hearing on the motion was held before the Honorable Superior Court Judge Claudia Baio. State Dkt. No. 107.00. Following that hearing, Judge Baio issued an order on Vesta's motion ("PJR Ruling"). State Dkt. No. 105.10. The PJR Ruling, dated October 25, 2021, granted Vesta a $3 million prejudgment remedy against ELX and Evolution. *Id.*

Shortly thereafter, the Defendants filed a motion for reconsideration, arguing that the state court erred by ignoring evidence that would have, as a matter of law, resulted in a lower award. State Dkt. No. 120.00. Judge Baio did not rule on the motion for reconsideration until January 13, 2022. State Dkt. No. 120.10. By that time, however, the state court no longer had jurisdiction of the case. On November 30, 2021, Vesta amended its complaint, naming additional Defendants, including *inter alia*, CIBC Bank USA f/k/a The Private Bank and Trust Company ("CIBC"). Once named, CIBC timely removed the case to federal court on December 27, 2021. Doc. No. 1. On that same day, the Defendants refiled the motion for reconsideration in the federal case. *See* Mot. to Reargue, Doc. No. 4.

B.  Factual Background

On June 6, 2019, Vesta and ELX entered into a sale leaseback transaction. *See* Fiedler Decl., Doc. No. 44-6, at ¶ 7. Vesta purchased property located at 10-30 Liberty Street a/k/a 45

---

[1] The docket of the state court proceedings is publicly available at:
https://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?DocketNo=NNHCV216118458S (last visited on Sept. 30, 2022).

For ease of reading, citations to the state docket will be referred to as "State Dkt." and the federal docket will be cited as "Doc."

Spring Street, New Haven, CT 06519 (the "Premises") from ELX, and ELX simultaneously entered into a commercial triple-net lease ("the Lease") to occupy the Premises as a tenant. *Id.* ¶¶ 4, 7. Per the lease terms, ELX had an obligation to pay an annual base rent of no less than $385,722.00, plus real estate taxes and utilities for a ten-year term. *Id.* at ¶ 7. Evolution guaranteed the Lease. *See* Guaranty Agreement, Doc. No. 44-3.

On December 31, 2020, ELX notified Vesta in writing of its intent to vacate the Premises. *See* Possession Agreement, Doc. No. 44-5, at 1. On January 4, 2021, Vesta issued ELX a default letter, which stated ELX defaulted on the payment of base rent in the amount of $29,893.50. *See* Fiedler Decl., Doc. No. 44-6, at ¶ 11. Additionally, ELX defaulted on its obligation to pay property real estate taxes in the amount of $25,219, its water bill in the amount of $1,942.46, and its sewer bill in the amount of $653.18. *Id.* at ¶¶ 13, 15, 17. Prior to vacating the Premises, ELX failed to remove its trade fixtures, materials and equipment from the Premises. *Id.* at ¶ 16. As a result, Vesta incurred a cleanup cost in the amount of $39,089.48. *Id.* ELX failed to maintain liability and property insurance as required under the Lease. *Id.* at ¶ 19. Vesta procured and paid for a new policy in the amount of $37,087.00. *Id.* Vesta incurred, and continues to incur, legal fees as a result of the breach, and the lease provides that Vesta is entitled to recover legal fees from ELX. *Id.* at ¶ 20.

On or about January 12, 2021, the parties entered into a Possession Agreement ("the Agreement"). *See* Possession Agreement, Doc. No. 44-5. The Agreement explicitly states:

> The Parties agree that the Lease has been **fully terminated** as of the date of this Agreement.

*Id.* at ¶ 3. The Agreement required ELX to vacate the premises by December 31, 2020, which it did. *Id.* at ¶ 4. Additionally, the Agreement contemplates that Vesta "reserves all of its rights to pursue all of its legal remedies against [ELX], and its successors, regarding its obligations under

the Lease and any Guarantees." *Id.* at ¶ 8. At the time of lease termination, the total amount of remaining rent due under the Lease amounted to $2,992,910.25 and the total amount of remaining real estate taxes due under the Lease amounted to $428,729.29. *See* Fiedler Decl., Doc. No. 44-6, at ¶¶ 12, 14.

## II.   STANDARD OF REVIEW

In the Second Circuit[2], the standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp.*, 70 F.3d 255, 257 (2d Cir. 1995). The District of Connecticut's Local Rules require that such a motion include "a memorandum setting forth concisely the matters or controlling decisions which the movant believes the Court overlooked." D. Conn. L. R. 7(c)(1); *see also New England Health Care Emps. Welfare Fund v. iCare Mgmt., LLC*, 792 F. Supp. 2d 269, 285 (D. Conn. 2011). The decision to grant or deny a motion for reconsideration is within "the sound discretion of the district court…." *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009) (cleaned up).

## III.   DISCUSSION

### A.   Relevant Law

Generally speaking, a prejudgment remedy is "intended to secure the satisfaction of a judgment should the plaintiff prevail." *Roberts v. TriPlanet Partners*, LLC, 950 F. Supp. 2d 418,

---

[2] As mentioned, the instant motion was filed in state court, and refiled in this Court once the case was removed. Consequently, the standard for reconsideration relied upon by the Defendants' is premised on Connecticut state law. Doc. No. 4, at 2. To be clear, federal courts exercising diversity jurisdiction apply federal procedural law. *Erie Railroad Company v. Tompkins*, 304 US 64 (1938); *see, e.g., Chien v. Future Fintech Grp. Inc.*, 2018 WL 4688304, at *1 (D. Conn. Sept. 28, 2018) (applying federal standard of review in deciding motion for reconsideration in a diversity action); *Avetisyants v. Astromedia Glob., Inc.*, 2015 WL 222151, at *1 (D. Conn. Jan. 14, 2015*)* (same).

420 (D. Conn. 2013) (cleaned up). Under Connecticut law, a prejudgment remedy is appropriate if the court, "upon consideration of the facts before it and taking into account any defenses, counterclaims or set-offs, claims of exemption and claims of adequate insurance, finds that the plaintiff has shown probable cause that such a judgment will be rendered in the matter in the plaintiff's favor in the amount of the prejudgment remedy sought and finds that a prejudgment remedy securing the judgment should be granted." Conn. Gen. Stat. § 52-278d(a).[3]

In considering an application for a prejudgment remedy, the court's function is "to determine whether there is probable cause to believe that a judgment will be rendered in favor of the plaintiff in a trial on the merits." *Id*. at 411 (cleaned up). Toward that end, courts must consider "not only the plaintiff's claim but also any defenses raised by the defendant." *Haxhi v. Moss*, 25 Conn. App. 16, 20 (1991).

With respect to damages, the plaintiff must demonstrate "probable cause that a judgment will issue in an amount equal to, or greater than, the amount of the prejudgment remedy sought." *TES Franchising LLC v. Feldman*, 286 Conn. 132, 147 (2008). The amount of damages need not be determined "with mathematical precision," but there must be a "reasonable basis for measuring" the plaintiff's loss. *See Rafferty v. Noto Bros. Const., LLC*, 68 Conn. App. 685, 693 (2002) (cleaned up).

B.  Application

As a preliminary matter, Judge Baio's denial of the Defendants' motion for reconsideration has no binding effect on this Court. *See N.Y. State Nat'l Org. for Women v. Terry*, 697 F. Supp. 1324, 1330 n.5 (S.D.N.Y. 1988) (citing *United States ex rel. Echevarria v.*

---

[3] Connecticut's prejudgment remedy statute applies in federal court actions in this District. *See* Fed. R. Civ. P. 64(a); *Roberts v. TriPlanet Partners, LLC*, 950 F. Supp. 2d 418, 420 (D. Conn. 2013) ("Federal Rule of Civil Procedure 64 provides that prejudgment remedies available under state law are also available to litigants in federal court.") (applying Conn. Gen. Stat. § 52-578d(a)).

*Silberglitt*, 441 F.2d 225, 227 (2d Cir. 1971) ("If a state court continues to act in spite of removal, any orders or decisions it renders are null and void."). Thus, I do not consider it.

Turning to the merits, the Defendants' argument primarily relies on the Possession Agreement—and for good reason. By that Agreement's terms, the Lease was terminated as of January 12, 2021. Vesta does not dispute that the Lease was terminated. Nor does it dispute that at the time the Agreement was executed, ELX had only defaulted on January rent. Considering future rents, and other potential expenses, such as the unpaid utilities, cleaning fee, and outstanding taxes,[4] Vesta has established probable cause to support a prejudgment remedy in the amount of $3 million. But the dispositive question is whether the Possession Agreement, in permitting Vesta to pursue its remedies under the Lease, allows Vesta to continue collecting rent payments.

Section 12.02(e) of the Lease provides in pertinent part:

> If this lease shall terminate for any reason whatsoever … [t]enant shall remain liable for damages as provided above.

*See* Ex. A, Lease, Doc. No. 44-6. Under Section 12.02(a)(i), those damages include:

> [A]ll unpaid Net Rent, additional rent and other sums and charges due under this Lease and allocable to the period through the date of Lease termination.

*Id.* To exercise that option, however, the Lease provides that Vesta (i.e., the landlord) must serve a Notice to Quit as set forth in Section 12.02 (a), (c). *Id.* It is undisputed that Vesta did not do so. Hr'g Transcript, Doc. No. 44-8, 70:4-70:9. By the plain terms of the Lease and Agreement then, it is unlikely that Vesta is entitled to post-termination rents.

Moreover, the Defendants have set forth newly discovered evidence that further supports their motion for reconsideration. *See* Addt'l Information Mem., Doc. No. 91. Unbeknownst to

---

[4] Vesta is also entitled to collect legal fees, which could contribute to this award. But Vesta never offered any evidence that the $3 million award it sought included that amount.

6

Judge Baio or the Defendants, in January 2021,Vesta received $175,000 pursuant to a letter of credit established to protect Vesta from potential breaches of the Lease. Flynn Decl., Ex. A, Doc. No. 91-1, at ¶ 14; Skalka Decl., Doc. No. 94-1, at ¶¶ 5–7. Additionally, Susan Fiedler ("Fiedler"), Vesta's corporate representative, misrepresented Vesta's ability to sell the Premises at the state court evidentiary hearing. *See* Addt'l Information Mem., Doc. No. 91. Specifically, Fiedler represented that Vesta had not set a selling price for the Premises. Hr'g Transcript, Doc. No. 44-8, 46:01–46:07. When asked if Vesta had an idea about what price the Premises would be offered, Fiedler answered in the negative. *Id.* at 47:26–48:01. Yet, emails obtained by the Defendants pursuant to a subpoena issued to CBRE, Vesta's real estate broker, show that multiple offers and counteroffers were exchanged between Vesta and potential bidders at prices millions of dollars higher than what Vesta could have ever recovered under the Lease. *See* Addt'l Information Mem., Doc. No. 91, at 8. To be clear, the Premises remain unsold. Skalka Decl., Doc. No. 94-1, at ¶ 11. But to the extent that the prejudgment award was premised on the assumption that the Vesta had received no offers for the Premises, that assumption was incorrect. Considered together, this newly discovered evidence counsels in favor of granting the motion for reconsideration.

## IV.   CONCLUSION

Because the Defendants' have clearly set forth information that was unknown and overlooked in the PJR Ruling, the motion for reconsideration, doc. no. 4, is **granted**. An evidentiary hearing to consider whether to issue a prejudgment remedy and in what amount will follow.

So ordered.

Dated at Bridgeport, Connecticut, this 30th day of September 2022.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge
