# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| VESTA LIBERTY STREET, LLC,<br>    Plaintiff,<br><br>    v.<br><br>ELX, LLC, et al.,<br>    Defendants. | No. 3:21-cv-1719 (SRU) |

## ORDER ON MOTION TO ALTER OR AMEND JUDGMENT

Plaintiff Vesta Liberty Street, LLC ("Vesta") brought this action against the defendants, ELX, LLC and Evolution Lighting, LLC, to recover damages incurred by Vesta due to ELX's breach of a commercial lease agreement (the "lease") for a property located at 10-30 Liberty Street a/k/a 45 Spring Street, New Haven, CT 06519 (the "Property"). After granting summary judgment in favor of Vesta on the question of liability for breach of the lease, I held a one-day bench trial on August 22, 2024 on the question of damages and on ELX's counterclaim for unjust enrichment. After the trial, I concluded that Vesta failed to prove that it suffered any damages for which it had not already been compensated, and that ELX proved that Vesta was unjustly enriched to ELX's detriment. *See* Mem. of Decision, Doc. No. 179. I entered judgment on November 4, 2024 for Vesta on its claims for breach of contract in the amount of $54,768.95, which judgment had already been satisfied, and for ELX on its counterclaim for unjust enrichment in the amount of $120,231.05. *See* Judgment, Doc. No. 180.

Vesta filed the instant motion to alter or amend the judgment on December 2, 2024. *See* Doc. No. 181. In its motion, Vesta argues that the judgment should be altered in the following ways:

1. to award Vesta damages on its breach of contract claims through May 31, 2021,

2. to enter judgment for Vesta on ELX's counterclaim of unjust enrichment, and

3. to award attorneys' fees to Vesta under the contract.

*Id.*

I assume basic familiarity with the facts of the case, as set forth in my findings of fact issued after the bench trial. *See* Mem. of Decision, Doc. No. 179, at 4-9. For the reasons that follow, Vesta's motion to alter or amend the judgment is **denied.**

## I.    Standard of Review

Litigants may file a motion to alter or amend a judgment pursuant to Rule 59(e) "no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). In this Circuit, a litigant who seeks reconsideration of an order or judgment pursuant to Rule 59(e) faces a difficult hurdle. Motions for reconsideration "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Courts have granted motions for reconsideration in limited circumstances, including: (1) where there has been an intervening change of controlling law; (2) where new evidence has become available; or (3) where there is a need to correct a clear error or prevent manifest injustice. *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citing 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4478). On the other hand, a motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (cleaned up).

## II.    Discussion

### A.  Damages

After trial, I awarded $54,768.95 in damages to Vesta on its breach of contract claims. That sum represented only the unpaid rent and expenses that were due prior to the parties' entering into the Possession Agreement on January 10, 2021, as well as attorneys' fees associated with negotiating the Possession Agreement. *See* Mem. of Decision, Doc. No. 179, at 14. I concluded that, after entering into the Possession Agreement that terminated the lease, Vesta failed to mitigate its damages—a prerequisite to recovering post-termination damages for a breach of lease under Connecticut law. *Id.*

Vesta explicitly states that it is "not seeking reconsideration of the Court's determination that it did not undertake reasonable efforts to mitigate its damages." *See* Doc. No. 181-1, at 7. Instead, it argues that the judgment should be altered or amended to award Vesta damages on its breach of contract claims through May 31, 2021, the date it alleges is the earliest date that the Property was in "showable" condition and thus could have been re-rented. *Id.* at 6-13. By Vesta's calculation, the damages it is entitled to include $29,928.75 in unpaid monthly rent from January 1, 2021 through May 31, 2021 (for a total of $149,643.75), unpaid insurance and taxes for that same period ($48,822.12), and utilities, maintenance, and repairs for that same period ($18,241.91). *Id.* Vesta argues that "the Court overlooked controlling data and controlling law" by "conclu[ding] that Plaintiff *could have* relet the Property by January 10, 2021 if the Plaintiff had chosen to lease vs. sell the Property." Doc. No. 181-1, at 7 (emphasis in original). Vesta's argument and its characterization of the judgment reflect a misunderstanding of the relevant legal standard.

Under Connecticut law, in the event that a tenant breaches a lease and the lessor elects to terminate the tenancy, the lessor is obligated to make "commercially reasonable efforts to

mitigate its damages." *AGW Sono Partners, LLC v. Downtown Soho, LLC*, 343 Conn. 309, 345 (2022). "What constitutes a reasonable effort under the circumstances of a particular case is a question of fact for the trier." *Danpar Assocs. v. Somersville Mills Sales Room, Inc*., 182 Conn. 444, 446 (1980). On the basis of all of the evidence presented at the bench trial, I concluded as a factual matter that Vesta *only* pursued opportunities to sell, and not re-lease, the Property for at least two years after ELX's breach. *See* Doc. No. 179, at 12-14. I therefore concluded that Vesta made *no* efforts, let alone "commercially reasonable" efforts, to mitigate its lost rental income, and thus could not recover damages for post-termination rent and other expenses due under the lease. *Id.*

That conclusion did not, however, imply that I also concluded Vesta could have relet the Property by the date that the lease was terminated. In breach-of-lease cases where a landlord attempts to find a replacement tenant but is ultimately unsuccessful, the duty to mitigate damages places a limit on the post-termination rent the landlord can recover. For example, Vesta cites to *Barone v. O'Connell*, a breach-of-lease case in which the court found that a landlord did take some efforts to mitigate its damages after the tenant's breach—by placing a "for rent" sign on the property and placing an advertisement in a local newspaper—and awarded damages for lost rental income only for the period of time in which the advertisements were active, and not later years in which the landlord make no further efforts to re-rent the property. 1995 WL 788961 (Conn. Super. Ct. Dec. 13, 1995), *aff'd*, 43 Conn. App. 913 (1996). But that case does not support Vesta's argument that it is entitled to damages for post-termination rent and expenses, and if anything, supports the opposite conclusion. Where, like here, a landlord makes absolutely no effort to re-rent a property, it is not entitled to damages for any lost rental income after terminating the lease. *See Goula v. Martinez*, 1984 WL 255760, at *2 (Conn. Super. Ct.

Feb. 21, 1984) (concluding that a landlord who, after evicting a tenant, "placed the premises in the hands of a real estate dealer primarily to sell it," did not mitigate its damages and is therefore not entitled to damages for unpaid rent after lease termination).[1] As Vesta seemingly concedes, because Vesta never attempted to re-rent the Property, post-termination damages would be purely hypothetical. *See* Mot. to Alter Judgement, Doc. No. 181-1, at 8 (Vesta characterizing the damages it seeks as "those it *would have* sustained *even if* it did mitigate.") (emphasis added).

In this case, there was simply no evidence at trial that Vesta was ever preparing the property to be re-rented. Nor was there evidence sufficient to conclude that the property could *not* have been re-rented before May 31, 2021, or some other definitive date between January 10 and May 31. Concluding otherwise would be speculative. Instead, as I explained in my memorandum of decision after trial, the evidence conclusively showed that Vesta had long expected ELX to vacate the Property prior to the expiration of the lease, and that Vesta intended to sell the property when that happened. *See* Trial Ex. 201 (email sent by Vesta managing partner in August 2020, long before ELX's breach, stating that Vesta had "targeted [the] [P]roperty five years ago after identifying the opportunity that the location presents" for redevelopment, and wanted to "explore either selling or finding a financial partner to redevelop."). Then, when ELX notified Vesta of its intent to vacate, instead of being poised to immediately find a replacement tenant, Vesta proceeded to take actions would have made it *harder* to re-rent the Property, such

---

[1] I note that, as I explained in my memorandum of decision after trial, the opposite rule would be inequitable, because it would allow a landlord to pursue a more lucrative use of a property instead of re-renting it, while placing the risk of that decision on the breaching tenant. *See* Doc. No. 179, at 10-12 (quoting *O'Brien v. Black*, 162 Vt. 448, 455 (1994)) ("The issue is not whether landlord's conduct was sound from a business perspective or in hindsight . . . landlord cannot impose the cost of its decision [to pursue a higher-paying tenant] on the breaching tenant and recover rent for the waiting period from tenant.").

as marketing it as dilapidated and suited for redevelopment as residential. *See* Doc. No. 179, at 12-13.

Other caselaw that Vesta cites in support of the proposition that it should recover damages through some hypothetical date when, "had it used measures the Court found reasonable, it *could* have relet the property," is distinguishable. Doc. No. 181-1, at 8. Vesta quotes the Supreme Court of Connecticut stating, in a breach-of-contract case from 1976, that it would "measure damages as though [Plaintiff] had acted reasonably." *Id.* at 12 (quoting *Willametz v. Goldfeld*, 171 Conn. 622, 627 (1976)). But that statement came in an explanation of why the plaintiff was *not* entitled to damages during a period of time in which it hadn't "exercise[d] reasonable conduct to minimize the damages occasioned by the defendant's breach." *Id.* Other cases Vesta cites are from out of state, *see, e.g., S.N. Mart, Ltd. v. Maurices Inc.,* 234 Neb. 343, 348 (1990), or are negligence cases, not breach-of-contract cases. *See, e.g., Preston v. Keith*, 217 Conn. 12 (1991). Another case Vesta cites, *1375 King's Highway, LLC v. Elephant Grp., LLC*, was itself a breach-of-lease case, but in support of the proposition that "the failure to mitigate must be the proximate cause of damages," it cited to *Morro v. Brockett*, 109 Conn. 87 (1929), a negligence case. 2012 WL 432506, at *5 (Conn. Super. Ct. Jan. 18, 2012). In any event, *1375 King's Highway* is a single Superior Court decision, and Vesta's reference to it does not convince me that I have overlooked controlling law sufficient to justify amending the judgment under Rule 59. *See Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

For those reasons, I conclude that Vesta has not met its burden of demonstrating that an intervening change of law, new evidence, or clear error in the original judgment justify amending the judgment to increase its damages. *See Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)

B. <u>Unjust Enrichment</u>

Next, Vesta argues that ELX did not meet its burden of proving that Vesta was unjustly enriched by letter of credit funds that it received from a third-party bank, CIBC, when ELX breached the lease. Vesta argues that I should therefore amend the judgment to eliminate my award of $120,231.05 in damages to ELX on its counterclaim of unjust enrichment. *See* Doc. No. 181-1, at 13-15. A defendant has been unjustly enriched when there has been "a transfer of a benefit from a third party to a defendant when the plaintiff has a superior equitable entitlement to that benefit." *New Hartford v. Connecticut Resources Recovery Authority*, 291 Conn. 433, 468 (2009). Vesta contends that ELX did not present evidence sufficient to support my conclusion that ELX has a superior equitable entitlement to the excess letter of credit funds that were paid by CIBC to Vesta. *See* Doc. No. 181-1, at 14-15. In fact, Vesta characterizes my decision after the bench trial as giving ELX the "benefit of the doubt" that it had paid for the letter of credit. *Id.* at 15.

The parties stipulated before trial that Vesta "received $175,000.00 from CIBC Bank via a letter of credit *funded by ELX*." *See* Pretrial Mem., Doc. No. 167, at ¶ 12(A)(iii) (emphasis added). That stipulation is binding. *See Gibbs ex rel. Est. of Gibbs v. CIGNA Corp.*, 440 F.3d 571, 578 (2d Cir. 2006) ("Having agreed on a set of facts, the parties who adopted the stipulation, and this Court, must be bound by them; we are not free to pick and choose at will.") (internal quotation marks and alteration omitted). Moreover, in my memorandum of decision I made clear that, based on the plain language of the letter of credit and the lease agreement, both of which were entered into evidence at the bench trial, it was more likely than not that "ELX did provide cash collateral to CIBC in order to obtain the letter of credit, and that the money paid to Vesta came from that collateral account." Mem. of Decision, Doc. No. 179, at 18. Therefore, ELX met its burden of proving by a preponderance of the evidence that it had a superior

equitable entitlement to the letter of credit funds that were paid to Vesta in excess of the damages

Vesta should have recovered. In its motion to alter or amend the judgment, Vesta points to no

intervening change in Connecticut law regarding unjust enrichment, new evidence undermining

my conclusion regarding ELX's claim of unjust enrichment, or clear error in the original

judgment. I therefore deny Vesta's motion to amend the judgment to eliminate my award of

$120,231.05 in damages to ELX.

### C.  Attorneys' Fees

Finally, Vesta argues that the judgment should be amended to award it attorneys' fees

under the lease in the amount of $14,915.12. *See* Doc. No. 181-1, at 15-17. That number

represents the fees incurred by Vesta in connection with obtaining possession of the Property and

initiating this lawsuit. Vesta limits the request for fees to those incurred before May 31, 2021—

the same date it alleges is the earliest possible date it could have re-rented the Property. *Id.* The

provision of the Lease governing attorneys' fees states that "[ELX] shall pay to [Vesta] all costs

and expenses . . . incurred by [Vesta] in pursuing its legal or equitable remedies" if ELX "shall

be in default in the performance or observance of any of its obligations under this Lease." Lease

Agreement, Trial Ex. 1, at ¶ 12.02(f). But because the Possession Agreement terminated the

lease on January 10, 2021, I concluded that Vesta could not enforce the contractual obligation of

ELX to pay its attorneys' fees after that date. *See* Doc. No. 179, at 20-21. Therefore, I awarded

Vesta only its attorneys' fees associated with negotiating and drafting the Possession Agreement:

$2,962.50. *Id.*

Vesta argues that Connecticut law permits a landlord to recover contractual attorneys'

fees incurred after a lease is terminated. *See* Doc. No. 181-1, at 16. In support, Vesta cites to

*Young v. Vlahos*, 103 Conn. App. 470 (2007). In *Young*, however, the court awarded post-

termination attorneys' fees to a landlord for the fees incurred in a summary process action initiated to evict the tenant, not in a breach of contract action. *Id.* at 480-81. *Young* is therefore wholly distinguishable. In two other cases cited by Vesta—*Union Square Southbury, LLC v. Accommodations Unlimited, Inc.,* 2013 WL 6133047 (Conn. Super. Ct. Oct. 31, 2013), and *Barone v. O'Connell*, 1995 WL 788961 (Conn. Super. Ct. Dec. 13, 1995)—attorneys' fees were awarded to landlords in breach-of-lease cases, but the award of at least some amount of attorneys' fees was not contested by the defendant and the basis for awarding fees was not discussed in depth. I am therefore not convinced that I have overlooked controlling law and thus deny Vesta's motion to amend the judgment to award it additional attorneys' fees.

## III.    Conclusion

Accordingly, for the reasons discussed above, Vesta's motion to alter or amend the judgment pursuant to Fed. R. Civ. P. 59(e) is **denied**.

So ordered.

Dated at Bridgeport, Connecticut, this 20th day of March 2025.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge